# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| COR CLEARING, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> CALISSIO RESOURCES GROUP, INC., a Nevada corporation; ADAM CARTER, an individual; SIGNATURE STOCK TRANSFER, INC., a Texas corporation; and DOES 1-50. <br><br> Defendants. | **Case No. 15-317** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

Plaintiff COR Clearing, LLC ("Plaintiff" or "COR Clearing"), by its attorneys, for its Complaint against Defendant Calissio Resources Group, Inc. ("Defendant" or "Calissio"), its President Adam Carter ("Carter"), and its transfer agent Signature Stock Transfer, Inc. ("Transfer Agent") (collectively, "Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1.      This case involves Defendants' calculated scheme to defraud the marketplace and the clearing system in order to obtain millions of dollars from unsuspecting market participants by exploiting a weakness in the dividend payment system of the third-party Depositary Trust Clearing Corporation ("DTCC"). Specifically, under the guise of what they claim to be a mere mistake, Defendants have defrauded COR Clearing and its customers by surreptitiously issuing hundreds of millions of shares of Calissio stock after declaring a dividend on all common shares outstanding prior to the issuance, then repurchasing hundreds of millions of these new shares (both on its own and through its affiliates), and relying on DTCC's dividend payment system to fail to distinguish between shares entitled to dividends and those not so entitled. Defendants capitalized on this circumstance when DTCC thereby paid to Calissio and purchasing

COMPLAINT

shareholders "dividends" with proceeds taken from selling shareholders' accounts.  Calissio's feigned mistake hardly serves to conceal what the facts show to be its conscious effort to deceive its shareholders into selling their shares of Calissio stock back to the company unaware that DTCC would charge them for the amount of a dividend on shares not so entitled, and then to claim substantial, yet unwarranted, dividends from unwary sellers and their clearing firms, such as COR Clearing.

2.      Here, Defendant Calissio, through DTCC, has charged COR Clearing as much as over $4 million to pay dividends presumed by DTCC to be owed to purchasing shareholders of the hundreds of millions of new shares in connection with Calissio's buy-back of its own stock from COR Clearing's customers.  The problem is, Calissio is admittedly not entitled to such dividends.

3.      Specifically, COR Clearing's customer Nobilis Consulting LLC ("Nobilis") purchased over 327 million shares of Calissio's stock and never received a dividend, as none was owed on these shares.  This customer then sold these shares on the open market.  These shares were sold—with COR Clearing standing in its shoes for the transaction—and Calissio repurchased hundreds of millions of these shares at a price, based on the information presented by Calissio, indicating that no dividend was owed on the shares.

4.      After the sale, DTCC informed COR Clearing that it would charge it with over $3.3 million in dividends, and DTCC debited COR Clearing that amount.

5.      The day after the debit took place, after COR Clearing informed DTCC that no dividends were owed for these shares, the president of Calissio, Adam Carter, purported that there was "a huge glitch/error on how the dividend was supposed to be paid out," and he pledged to resolve this supposed inadvertence.  He also said, "this was a problem created by FINRA and not . . . Nobilis Consulting LLC."  Yet, despite this, Calissio has yet to return the money collected by DTCC to COR Clearing.

6.      On information and belief, Defendants perpetrated this scheme against Beaufort Capital Partners ("Beaufort"), another customer of a COR Clearing client broker, in that instance

2

COMPLAINT

improperly retaining as much as $700,000 in dividends.

7.      In sum, Calissio's retention of some or all of the over $4 million charged to COR Clearing's accounts, notwithstanding its admission that it is not entitled to same, is an indication of Calissio's intent to stall any legal action by COR Clearing, in order to further the fraud being perpetrated.

8.      Through its fraud, Calissio has retained some or all of $4 million from COR Clearing to which it has admitted it is not entitled.  COR Clearing is entitled to restitution of these funds, and injunctive relief is warranted to ensure these funds are not disposed of by Defendants but rather held until they can be repaid to COR Clearing after its ultimate success on the merits.

## PARTIES

9.      Plaintiff COR Clearing is a Delaware limited liability company with its principal place of business in Omaha, Nebraska.

10.      COR Clearing is an independent full-service clearing and settlement firm.  COR Clearing serves approximately 90 introducing brokers in all 50 states and holds assets in custody exceeding $7 billion.  COR Clearing provides technology, administrative services, and product offerings through multiple customized platforms.  As a correspondent clearing firm, COR Clearing's principal business is the provision of custody and settlement services to introducing broker dealers such as J.H. Darbie & Co. ("Darbie") and their end customers such as Nobilis.

11.      Defendant Calissio, formerly Amarium Technologies, Inc., is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

12.      On information and belief, Adam Carter in an individual residing in Las Vegas, Nevada, and he is President of Calissio.

13.      Signature Stock Transfer, Inc. is a Texas corporation with its principal place of business in Plano, Texas.

## JURISDICTION AND VENUE

14.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

COMPLAINT

§ 1332(a), as Plaintiff COR Clearing is a Delaware limited liability company with its principal place of business in Omaha, Nebraska, Defendant Calissio is a Nevada corporation with its principal place of business in Nevada, Defendant Carter is an individual residing in Las Vegas, Nevada, Defendant Signature Stock Transfer, Inc. is a Texas corporation with its principal place of business in Plano, Texas, and the aggregate amount in controversy, being over $4 million, exceeds the jurisdictional amount of $75,000.00.

15.     This Court has personal jurisdiction over Defendants because Defendants purposefully directed their actions to Nebraska to harm COR Clearing in this forum by having DTCC pursue COR Clearing for the funds, which were paid from its accounts in Nebraska. Because of these contacts with this forum, assertion of jurisdiction to remedy Defendants' conduct does not offend traditional notions of fair play and substantial justice.

16.     Venue is appropriate in the District of Nebraska pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## BACKGROUND

### Calissio's Scheme to Defraud Shareholders

17.     On information and belief, on September 30, 2010, Calissio entered into an agreement with Industrias Calissio SUR SA for a total of 450 million shares to be issued at a cost basis of $.01.

18.     On information and belief, on June 1, 2015, Calissio announced a program to buy back its shares, and it proceeded to buy back millions of its outstanding shares. On information and belief, certain of Calissio's affiliates also purchased shares as part of this program.

19.     Calissio announced a quarterly dividend payment to be distributed on August 17, 2015, consisting of a cash dividend of $0.011 per common share, to be paid to the holders of the issued and outstanding Common Shares as of the close of business on June 30, 2015, and a stock dividend of 3% to be paid to shareholders of record at the close of business on June 30, 2015 (the "June 30, 2015 record date").

4

COMPLAINT

20.     On information and belief, after the June 30, 2015 record date had come and gone, Calissio and Transfer Agent converted Calissio's debt into even more shares, which totaled approximately four times the number of shares outstanding as of the June 30, 2015 record date.

21.     Calissio issued press releases regarding the dividend and the buyback program, but did not mention this deluge of additional shares, which it also repurchased, on its own and through affiliates, as part of its buyback program.  Instead, Calissio, Carter, and Transfer Agent kept this issuance silent, notifying no one outside their inner circle of conspirators.

22.     Because these new shares were issued after the June 30, 2015 record date, they were not eligible for the dividends attached to the previous shares.

23.     Indeed, due to the massive dump of new stocks after the June 30, 2015 record date, four out of five Calissio shares were ineligible for a dividend.

24.     Pursuant to standard procedure, the payment date for the dividends on the eligible shares was August 17, 2015, and the shareholders who were entitled to those dividends were those that owned the shares as of August 19, 2015 (the "ex-dividend date").

25.     Pursuant to mandatory procedure, if a shareholder of record as of the June 30, 2015 record date sold its shares after the June 30, 2015 record date, but before the August 19, 2015 ex-dividend date, it also sold its right to receive the dividend.  The right to receive the dividend was thus attached to the shares as what is known as a due bill.

26.     Because the only information available to an issuer at the ex-dividend date as to the owner of the shares is the name of the shareholder of record as of the earlier record date, it issues the dividends to those entities.  If that shareholder sold the shares after the record date but before the ex-dividend date, pursuant to standard procedure, the dividend is withdrawn from the shareholder of record and paid to the shareholder who had purchased the shares before the ex-dividend date.

27.     On information and belief, because Calissio, and its affiliates, purchased the vast majority of the common shares outstanding on the ex-dividend date back from shareholders before the ex-dividend date as part of its buyback program, a large percentage of the newly

5

issued shares ineligible for a dividend are owned by Calissio.

28. To collect dividends owed to purchasers of shares after the June 30, 2015 record date, DTCC collected the due bills from the shareholders of record. According to procedure, DTCC first paid Calissio and the other purchasers the dividends, then recovered the amounts paid from the selling shareholders, to cover DTCC's payout to Calissio.

29. However, as a result of DTCC's procedures, DTCC paid dividends to Calissio on all shares on its system—including the 80% of shares that were issued after the June 30, 2015 record date that were not dividend-eligible.

30. Accordingly, DTCC collected dividends from entities that had sold non-dividend-eligible shares to Calissio and its affiliates before the ex-dividend date, even though those sellers had not received any dividends themselves from Calissio. This obviously created a scenario where Calissio was being paid dividends on the basis of shares that were not dividend-eligible, causing a windfall to Calissio and its affiliates, and a loss to the sellers.

31. On information and belief, Calissio, Carter, and Transfer Agent were aware of the fact that DTCC was collecting dividends for it on non-dividend-eligible shares that Calissio and its affiliates had repurchased, as Calissio was the one who authorized the dividend and knew which shares were eligible and which were not eligible. However, Calissio, Carter, and Transfer Agent intended to defraud the sellers, the clearing system, and indeed the marketplace by failing to provide this information to DTCC or the sellers of those shares. The reason was simple – Defendants' artifice of fraud was to perpetrate this scheme for the precise purpose of collecting additional dividends from unsuspecting sellers and their clearing firms.

32. On information and belief, Calissio also benefited from this scheme, and harmed the sellers, in another way. Specifically, Defendants' fraud on the marketplace allowed Calissio and its affiliates to purchase shares in Calissio's buyback program for substantially less than the value of the dividend payable on each share. Because the sellers of the shares had no reason to believe that they owed any dividends on these shares, they did not factor these costs into the consideration of their sale prices to Calissio and its affiliates. Defendants engaged in these

6

purchases in furtherance of their fraudulent scheme.

33.    On information and belief, Calissio repurchased at least 177 million of its shares by the ex-dividend date (and its affiliates likely purchased additional shares), the majority of which were not dividend-eligible (a fact known to Calissio, which itself authorized the dividends in the first place).

**Purchase of Calissio Shares by COR Clearing's Customer & Subsequent Sale to Calissio**

34.    Relative to COR Clearing, between July 29, 2015, and August 19, 2015, Nobilis, through its broker Darbie—a customer of COR Clearing—obtained over 327 million shares of stock in Calissio through a conversion of debt to equity.

35.    All 327 million of these shares were issued after the June 30, 2015 record date, and therefore Nobilis never received a dividend on any of these shares, as none was owed to it.

36.    On information and belief, subsequent to obtaining the Calissio shares, Darbie, on behalf of Nobilis, sold some or all of these shares back to Calissio and/or its affiliates (or other entities which ultimately sold them to Calissio).

37.    For this transaction, COR Clearing stood in the shoes of Nobilis, funding all due bills associated with the sale on behalf of Nobilis.

38.    Having no reason to believe any dividend was owed to Calissio for these shares, because these shares were issued after the June 30, 2015 record date and were thus ineligible for dividends, Nobilis, through COR Clearing, sold the shares, on information and belief, to Calissio (or other entities which ultimately sold them to Calissio), with gross proceeds totaling approximately $700,000.

**DTCC's Improper Demand for Dividend Payments & Attempted Cover-Up**

39.    On August 21, 2015, DTCC contacted COR Clearing and assessed a bill to Nobilis for over $3.3 million—significantly more than the amount Nobilis received for the shares—some or all of which was purportedly owed to Calissio in dividends for the shares sold by Nobilis through COR Clearing.

40.    As a result, on August 24, 2015, DTCC debited COR Clearing over $3.3 million.

COMPLAINT

41.     COR Clearing sent a letter to DTCC, informing it that "such payment would be in error," as these shares "were not in existence at the time of the dividend record date of June 30, 2015."  (Exhibit A.)  COR Clearing also sent letters to Darbie and Nobilis, among others, alerting them to this issue.

42.     On August 25, 2015, having been alerted that Nobilis, Darbie, and COR Clearing were aware of the issue with the dividends, Adam Carter, president of Calissio, sent an e-mail to Michael Yarmish of Darbie and a representative of Nobilis, admitting that no dividend was owed by Nobilis and asserting that DTCC's collection of the money from COR Clearing was a mistake:

> Your client Nobilis Consulting LLC has asked me to reach out to you.  As you are aware there has been a huge glitch/error on how the dividend was supposed to be paid out.  We are currently in conversations with DTCC and will be resolving this issue over the next couple of days.  There is absolutely no reason for closing your clients account as they are not at fault here.  Once again this was a problem created by FINRA and not your client Nobilis Consulting LLC.

(Exhibit B.)

43.     That same day, Mr. Carter made essentially the same admission to Carlos Salas, CEO of COR Clearing: "As you are aware there has been a huge glitch/error on how the dividend was supposed to be paid out.  We are currently in conversations with DTCC and will be resolving this issue over the next couple of days."  (Exhibit C.)

44.     On information and belief, Defendants perpetrated this fraud against another customer as well, Beaufort, who converted over 150 million shares and then sold over $90 million shares during the due bill period.  Relative to this customer, Defendants received the proceeds from the DTCC charge to COR Clearing in the amount of nearly $700,000.

45.     Despite this admission, Calissio has yet to return any portion of the over $4 million taken from COR Clearing by DTCC.  Calissio's retention of this money only further confirms that Calissio's admission of liability is nothing more than a tactic to stall legal action by COR Clearing in furtherance of the fraud being perpetrated by Defendants.

46.     At this time, there exists the immediate danger that Defendants will abscond with

8

COMPLAINT

the improperly-held dividends and make it unlikely or impossible for Plaintiff to obtain complete relief in this action.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment by Plaintiff Against Defendants)

47.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

48.     The 327 million shares (in whole or in part) sold by Nobilis (through COR Clearing) to Calissio and/or its affiliates were issued after the June 30, 2015 record date, and thus were ineligible for any dividends.  Indeed, Nobilis received no such dividend on the ex-dividend date.

49.     Defendants caused the wrongful charging of Nobilis (through COR Clearing) of a dividend of over $3.3 million to which it is not entitled, and therefore the over $3.3 million debit was wrongfully made against COR Clearing's account.  Defendants caused this same harm as to Beaufort in the amount of nearly $700,000.

50.     Defendants, through Carter, purported to Nobilis, Darbie, and COR Clearing that DTCC's debiting of the over $4 million was the result of a "huge glitch/error on how the dividend was supposed to be paid out."  Therefore, Defendants admitted that the shares sold by Nobilis/COR Clearing were ineligible for the dividends, and COR Clearing should not have been debited.

51.     By reason of the foregoing, COR Clearing is entitled to a declaration that Defendants are not entitled to the over $4 million in dividends for the purchase of the shares from Nobilis, and therefore the $4 million debits were wrongfully made against COR Clearing's account.

52.     In addition to all other forms of relief, COR Clearing seeks injunctive relief precluding Defendants from disposing of the amount Calissio charged in dividends to COR Clearing, because COR Clearing is likely to succeed on the merits of this claim, COR Clearing would be irreparably harmed if Defendants were to prevent COR Clearing from being able to

COMPLAINT

recover this money after a favorable judgment, and preventing Defendants from succeeding in its fraud is in the public interest.

## <u>SECOND CLAIM FOR RELIEF</u>

### (Unjust Enrichment by Plaintiff Against Defendants)

53.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

54.     There is no contract between Calissio and COR Clearing.

55.     COR Clearing, standing in the shoes of Nobilis and Beaufort, provided a benefit to Defendants in the form of the shares of stock sold, which ultimately came under the ownership of Calissio.  It also provided a benefit in the form of the over $4 million debited by DTCC, some or all for the benefit of Calissio.

56.     Defendants also received and accepted the benefit of the shares from Nobilis and Beaufort, and some or all of the over $4 million from COR Clearing.

57.     Calissio admitted, by and through its President, that it was not entitled to this dividend from Nobilis or COR Clearing.

58.     Because no dividend was owed to Calissio for the shares sold by COR Clearing on behalf of Nobilis and Beaufort, it would be inequitable and unjust for Defendants to retain the over $4 million it debited from COR Clearing, through DTCC.

59.     COR Clearing is entitled to restitution in an amount equal to the amount debited by DTCC, over $4 million.

60.     In addition to all other forms of relief, COR Clearing seeks injunctive relief precluding Defendants from disposing of the amount Calissio charged in dividends to COR Clearing, because COR Clearing is likely to succeed on the merits of this claim, COR Clearing would be irreparably harmed if Defendants were to prevent COR Clearing from being able to recover this money after a favorable judgment, and preventing Defendants from succeeding in its fraud is in the public interest.

10

COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Fraud by Plaintiff Against Defendants)

61.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

62.     Calissio and Carter omitted from any public press releases that Calissio issued hundreds of millions of shares of stock after the June 30, 2015 record date.

63.     Calissio and Carter intentionally omitted this material fact knowing that it would cause confusion among record shareholders, and would make it easier for Calissio to misrepresent the dividend eligibility of 80% of the outstanding shares.

64.     Then, Calissio and Carter took advantage of this confusion by allowing DTCC, pursuant to its usual procedures, to provide Calissio with dividends from dividend-ineligible shares.  Calissio and Carter intentionally omitted this information in order to deceive and gain access to funds to which they were not entitled.  Having omitted this information, Defendants then pursued and obtained payments from entities, such as Nobilis, Beaufort, and COR Clearing, that had sold these dividend-ineligible shares to Calissio before the ex-dividend date.

65.     Although Defendants knew that DTCC was improperly providing Calissio with the dividends for these dividend-ineligible shares, Defendants did nothing to rectify this circumstance, but rather allowed DTCC to continue to provide Calissio with funds to which they knew it was not entitled.

66.     Nobilis—and thus COR Clearing, who stood in the shoes of Nobilis for the sale to Calissio—sold its shares of Calissio stock back to Calissio for a lower price than it otherwise would have, relying on its reasonable and correct belief that these shares were not eligible for dividends.  This is evidenced by the fact that the net proceeds for the sale of shares were only $700,000, while the dividends were over $3.3 million.

67.     The same fraud was perpetrated against Beaufort, resulting in wrongful retention of dividends in the amount of nearly $700,000.

68.     For its part in this fraudulent scheme, Calissio issued the dividend-ineligible

11

stocks, omitted material information about dilutive share issuances, and misrepresented the dividend eligibility of the shares. It then reaped the rewards of its fraud by collecting dividends on the dividend-ineligible shares, and attempted to cover up the scheme when discovered, by feigning a "glitch" in the system.

69.     For his part in this fraudulent scheme, Adam Carter, as president of Calissio, orchestrated the scheme by causing the dilutive share issuance without any notice, hiding from DTCC the fact that not all shares were dividend eligible, and failing to correct DTCC's dividend collection, thereby causing DTCC to collect dividends on all shares. He then covered up this fraud by communicating to COR Clearing, Darbie, and Nobilis that it was all the result of a "glitch" in the system.

70.     For its part in this fraudulent scheme, Transfer Agent acted as the instrumentality used by the other Defendants to carry out the fraud. Transfer Agent should have known that not all shares were entitled to dividends, but it kept this silent from purchasers and shareholders, and it made no effort to alert DTCC of this dividend issue, allowing the other Defendants to perpetrate the fraud without alerting their victims.

71.     This fraud was committed with malice and the intent to deceive COR Clearing.

72.     COR Clearing was proximately harmed by Defendants' material misrepresentations and omissions, in the form of the over $4 million in funds debited by DTCC.

73.     When confronted with this fraud, Calissio, through Carter, perpetrated yet another fraud by asserting that this was a simple technical glitch. However, Defendants have still yet to remedy the issue, making it evident that it was simply furthering its deception to delay legal action.

74.     The aforementioned conduct of Defendants constituted deceit or concealment of material facts known to them with the intent of thereby depriving COR Clearing of property or legal rights or otherwise causing injury, and was despicable conduct that subjected COR Clearing to cruel and unjust hardship in conscious disregard of COR Clearing's rights, so as to justify an award of exemplary and punitive damages.

COMPLAINT

75.     In addition to all other forms of relief, COR Clearing seeks injunctive relief precluding Defendants from disposing of the amount Calissio charged in dividends to COR Clearing, because COR Clearing is likely to succeed on the merits of this claim, COR Clearing would be irreparably harmed if Defendants were to prevent COR Clearing from being able to recover this money after a favorable judgment, and preventing Defendants from succeeding in its fraud is in the public interest.

## PRAYER FOR RELIEF

WHEREFORE, COR Clearing prays for judgment against Defendants as follows:

1.     That pending the final hearing of this case, this Court issue an order for a temporary restraining order, preliminary and permanent injunction prohibiting Defendants from disposing of the over $4 million referenced herein until those funds can be repaid to COR Clearing after success on the merits;

2.     For declaratory judgment that Defendants are not entitled to the over $4 million dividend from Calissio's purchase of Calissio shares from Nobilis;

3.     For restitution of the money debited by DTCC;

4.     For punitive damages;

5.     For costs of suit incurred herein, including attorneys' fees; and,

6.     For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff COR Clearing, LLC demands a trial by jury on all issues so triable.  Plaintiff COR Clearing, LLC requests that the trial take place in Omaha, Nebraska.

COMPLAINT

Respectfully submitting this 26th day of August, 2015.

By:   __s/ Michael T. Hilgers_____
Michael T. Hilgers (#24483)
mhilgers@goberhilgers.com
Carrie S. Dolton (#24221)
cdolton@goberhilgers.com
GOBER HILGERS PLLC
14301 FNB Parkway, Suite 100
Omaha, NE 68154
Telephone: (402) 218-2106
Facsimile: (877) 437-5755

David L. Aronoff*
daronoff@winston.com
Saul S. Rostamian*
srostamian@winston.com
Andrew G. Smith*
agsmith@winston.com
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Telephone: (213) 615-1700
Facsimile: (213) 615-1750

* *pro hac vice* applications forthcoming

*Attorneys for Plaintiff COR Clearing, LLC*

COMPLAINT