UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| COR CLEARING, LLC, a Delaware limited liability company, | Case No. 8:15-cv-00317-LES-FG3 |
| Plaintiff, | **PLAINTIFF COR CLEARING, LLC'S REDACTED BRIEF IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND THINGS IN RESPONSE TO SUBPOENA** |
| v. | |
| CALISSIO RESOURCES GROUP, INC., a Nevada corporation; ADAM CARTER, an individual; SIGNATURE STOCK TRANSFER, INC., a Texas corporation; and DOES 1-50. | |
| Defendants. | |

Plaintiff COR Clearing, LLC ("COR Clearing") hereby submits this brief in support of its Motion to Compel in which it seeks an order compelling TD Ameritrade Clearing, Inc. ("TDAC") to produce documents and things responsive to COR Clearing's subpoena served on or about December 4, 2015 (the "Subpoena"). In support thereof, and to remedy TDAC's failure to produce the information requested by the Subpoena, COR Clearing respectfully shows the Court as follows:

### I.     INTRODUCTION

In its lawsuit pending in front of this Court, COR Clearing seeks to remedy a harm caused by Defendants Calissio Resources Group, Inc. ("Calissio"), Adam Carter, and Signature Stock Transfer, Inc. ("Signature"). (Original Complaint, Dkt. No. 1.) Because of fraudulent actions undertaken by Calissio and Carter, funds were unlawfully debited from COR Clearing's accounts in order to fund unauthorized, unlawful, and void due bills paid to purported shareholders of Calissio in connection with the transfer of shares not entitled to dividends and therefore not giving rise to due bills upon transfer.

TDAC is in possession of information that is highly relevant to this lawsuit. As it previously has acknowledged to this Court, TDAC received funds relating to these due bills, and it distributed these funds to 764 of its customers collectively owning 84,926,667 shares of Calissio stock. (*See* TDAC's Brief in Opposition to Receiver, at *7-8, Dkt. No. 41). TDAC represented to this Court that it credited its customers $934,193.55 for due bills attributable to purchases of Calissio stock during the time period at issue in the Complaint. *Id.* COR Clearing lawfully issued and served a subpoena on TDAC in order to discover this highly relevant information. The subpoena seeks, among other things, the identity of individuals or entities that gained an unjust windfall at COR Clearing's expense; it also seeks information regarding the true extent of the fraud and unlawful activity perpetuated by Defendants.

TDAC previously opposed COR Clearing's Motion to Appoint a Receiver, the denial of which necessitated factual discovery into the individuals and entities that were unjustly enriched from this fraud. Now TDAC opposes COR Clearing's attempt to discover the participants in and beneficiaries of that fraud through the tools available to COR Clearing via the Federal Rules of Civil Procedure; COR Clearing files this Motion because TDAC has improperly refused to produce the documents requested by the Subpoena. TDAC has information that is at the center of COR Clearing's efforts to remedy the harm done to it by the fraud, and its non-compliance with the subpoena effectively perpetuates the harm done by Calissio's fraud.

For the reasons stated below, COR Clearing respectfully requests that the Court grant the Motion, order TDAC's full and complete production of documents responsive to the subpoena, and grant COR Clearing such other relief as to which COR Clearing is entitled.

## II.     FACTUAL BACKGROUND

A.     <u>The Subpoena Seeks Information Relevant To COR Clearing's Lawsuit</u>

The Subpoena (attached hereto as **Exhibit A)**, seeks highly relevant, critical information relating to COR Clearing's lawsuit against Calissio, Carter, and Signature pending before this Court. Through COR Clearing's detailed complaint and the arguments and materials submitted to this Court as part of COR Clearing's Motion to Appoint a Receiver (Dkt. Nos. 1, 21, 22), this Court is familiar with the facts underlying COR Clearing's action. For purposes of this Motion, COR Clearing provides the following summary of the factual background.

This lawsuit is about Defendants Calissio and Carter's scheme to defraud COR Clearing and others by issuing and receiving improper dividend payments and related due bills. To execute their fraud, Calissio and Carter took advantage of a weakness in the due bill payment system implemented by Depositary Trust Clearing Corporation ("DTCC").[1] On September 30, 2010, Calissio issued a large number of shares of Calissio stock at a cost basis of $.01. On June 1, 2015, Calissio announced that it had scheduled a dividend payment for August 17, 2015; specifically, it announced that on August 17, 2015, a cash dividend of $0.011 per common share of the Company was "to be paid to the holders of the issued and outstanding Common Shares as of the close of business on June 30, 2015." (Declaration of David Aronoff at ¶ 5, Dkt. No. 22-1.) Those shareholders who purchased these shares between June 30 and August 19, 2015 were entitled to this dividend, which is paid to the purchaser through the assessment of a due bill against the sellers and for the benefit of the purchasers during this period. (Declaration of Carlos Salas at ¶ 17, Dkt.

---

[1] Because of the complexity of the fraud and DTCC's interim accounting procedures, a brief summary is provided in this Motion. A more complete explanation and description of the fraud may be found in COR Clearing's Original Complaint, and the affidavits of Carlos Salas and David Aronoff in support of COR Clearing's Motion to Appoint Receiver.

No. 22-11.)

What Calissio failed to disclose in its multiple press releases, however, was that after June 30, 2015 (the "record date"), it issued hundreds of millions of new shares of common stock in connection with the conversion of convertible debt previously issued by Calissio. (Salas Decl. ¶ 18.) These new shares totaled approximately four times the number of shares outstanding as of the record date of June 30th. (*Id*.) Because the new shares (which totaled approximately 80% of all Calissio shares available) were issued after the record date, they were not eligible for the dividends attached to the previous shares. (Salas Decl. ¶ 17.) And as the obligation of a seller of shares to pay due bills to a purchaser of shares arises only where a dividend is owed on the shares at the time of the transfer, no due bills were owed to the purchasers of the new shares.

DTCC nonetheless assessed and paid due bills on all shares of Calissio stock that transacted between June 30 and August 19. (Salas Decl. ¶ 10.) This resulted in a massive error that took money belonging to COR Clearing and others out of their accounts at DTCC and paid it into the accounts of other DTCC members such as TDAC who were not entitled to it, which parties in some cases paid these amounts forward to the brokers and customers who had initiated the purchases of the shares. A significant portion of those credits were funded by debits wrongly charged against COR Clearing's account. On August 20 and 21, 2015, DTCC debited COR Clearing for approximately $4.0 million relating to these erroneous due bills assessed on the shares sold by COR Clearing's customers.

Relevant here, the error resulted in credits made to TDAC's account by DTCC and thereafter credited by TDAC to the accounts of at least 764 of TDAC's customers who had initiated purchases of Calissio shares. TDAC is a broker-dealer that offers securities transaction settlement services to its customers. As such, TDAC facilitates its customers' purchase of stock shares on

the OTC Markets.  As TDAC has previously acknowledged to this Court, TDAC credited 764 of its customers with due bill payments (amounting to nearly $1 million) which were wrongly funded by monies improperly withdrawn from COR Clearing's accounts.  (Dkt. No. 41, at *7.)  As a broker-dealer that settled the purchase transactions for the Calissio shares, TDAC has relevant information related to its customers' purchase of the Calissio shares and the improper payments of due bills to those shareholders including, but not limited to, the identity of those customers and amounts credited.

TDAC and its customers received an improper windfall.  Moreover, a large portion of this money went to Calissio and its affiliates because of Calissio's stock repurchase program.  Calissio defrauded the market by discreetly issuing shares of Calissio stock that were not dividend-eligible and then buying back those shares, knowing that DTCC's normal course of action is to collect due bill payments from companies and pay the funds to the purchasers of all shares in its system without verifying whether the shares or the recipients were actually eligible for the dividend payments that would have justified the due bills.  Upon information and belief, Calissio used affiliates and other individuals as part of its scheme as shadow purchasers to discretely profit from its planned fraudulent scheme.  The identities of those individuals are in possession of the member firms such as TDAC.

Finally, TDAC is in possession of non-privileged communications involving the facts underlying this dispute.  Since serving the Subpoena, COR Clearing has learned that TDAC communicated directly with DTCC regarding this dispute and to potential remedial actions thereto.  (*See* ▮ attached hereto as **Exhibit B**.)  This email reflects that TDAC communicated with ▮ at DTCC.  Communications reflecting the discussion with ▮ or any other DTCC personnel are responsive to the Subpoena

and relevant to COR Clearing's attempt to remedy the harm done to it. Further, and upon information and belief, TDAC customers have communicated with TDAC regarding the status of their improper payments. Those communications are also responsive to the Subpoena and relevant to COR Clearing's claims.

**B.      TDAC Has Refused to Produce Documents Sought by the Subpoena.**

On December 4, 2015, COR Clearing served the Subpoena on TDAC. (*See* Ex A.) The subpoena set a response deadline of December 18, 2015. (*Id.*) In response to COR Clearing's subpoena, TDAC's outside counsel sent a letter setting forth various objections to the subpoena's requests for production, and stating that "on December 18, 2015, TDAC will not be producing any documents in response to the Subpoena." (*See* Dec. 17, 2015 Letter from William F. Hargens, attached hereto as **Exhibit C**.)

After TDAC's initial response, counsel for COR Clearing and counsel for TDAC exchanged extensive communications in order to identify whether TDAC would agree to produce any responsive documents. Ultimately, those efforts failed. While TDAC has negotiated with COR Clearing regarding the scope of the Subpoena and agreed to some limited production of information, TDAC ultimately has refused to provide two critical sets of information: the identity of the at least 764 TDAC customers who initiated purchases of Calissio shares during the relevant period and who TDAC improperly credited with due bill payments relating to Calissio stock and non-privileged communications regarding the purchases and due bill payments. These documents are responsive to the Subpoena and relevant to COR Clearing's claims in the underlying lawsuit; thus, the Court should compel TDAC to produce them.

### III. ARGUMENT AND AUTHORITIES

When a party issuing a subpoena makes a threshold showing that the discovery sought is relevant, a person or company resisting the subpoena bears the burden of showing that its objections are valid by providing specific explanations or factual support as to how the requested information is improper. *E.g.*, *Kinzer v. Remington Arms Co.*, No. 8:11-cv-75, 2011 WL 1659883, at *3 (D. Neb. May 3, 2011) (denying third-party motion to quash subpoena). As shown further below, the Subpoena is narrowly tailored and seeks documents that are highly relevant to this action, and TDAC's objections are baseless. Thus, the Court should compel TDAC's compliance with the Subpoena.

#### 1. Request Nos. 1 and 2 are Narrowly Tailored to Highly Relevant Information.

Request No. 1 seeks documents "sufficient to identify" the individuals or entities to which TDAC sold or transferred Calissio stock between June 30, 2015, and August 19, 2015, and Request No. 2 seeks documents "sufficient to show" specific information about the identified individuals and their transactions (for example, the date and amount of each such sale or transfer and the issue date of the shares). (Dkt. No. 1-2 at p. 9). As has been explained in detail to this Court and to TDAC, this limited 51-day period is tied directly to the period in which the fraudulent activity took place. Calissio announced that a dividend was to be paid to holders of outstanding Calissio shares as of close of business on the record date of June 30, 2015, and the shareholders who were to receive the dividends were those that still owned the shares as of August 19, 2015. In between these dates, Calissio discretely issued hundreds of millions of new shares of common stock (approximately four times the number outstanding as of the record date) and bought back a large portion of those shares. Calissio recognized that while these new shares (which account for some 80% of Calissio shares) were not eligible for the dividend, DTCC

nevertheless would assess and pay (and ultimately did assess and pay) due bills on all shares of Calissio stock. The result was a massive error that took money belonging to COR Clearing and others out of their accounts and improperly paid it into the accounts of those who purchased Calissio stock before August 19, 2015. On their face, Request Nos. 1 and 2 are narrowly tailored to identifying those individuals who purchased or otherwise obtained Calissio stock during this 51-day window in which the fraudulent activity took place. Thus, this information is highly relevant to both COR Clearing's unjust enrichment and fraud claims.

TDAC's objections to Request Nos. 1-2 are premised on an assumption that TDAC does not have, or cannot locate, responsive information. (*See* Ex. C.) TDAC's tortuous reading of these Requests in its objection letter does not square with the plain language of the Requests. In any event, TDAC has previously indicated to this Court it has detailed information regarding the beneficial ownership of Calissio shares during the subject time period. Indeed, TDAC proffered detailed briefing and a declaration to this Court in which it demonstrated that it both retained and had access to information regarding the ownership of shares of Calissio stock and related transaction detail regarding those shares. Dkt. No. 41, at *7-8; Dkt. No. 42-1 (Declaration of Chad Johnsen). TDAC is in possession of information responsive to these Requests, and that information ought to be produced.

**2. Request Nos. 3 and 4 are Similarly Narrow and Tailored to Information Relevant to COR Clearing's Claims.**

Request Nos. 3 and 4 are similarly narrow. These two requests are directed to identifying those individuals and entities who wrongfully benefited from the fraudulent scheme. Specifically, Request No. 3 seeks documents "sufficient to identify" the TDAC customers who received any transfer, payment, debit, or credit relating to their ownership, possession or control of Calissio stock and Request No. 4 seeks documents "sufficient to show" specific information

about the identified individuals and their Calissio transactions (for example, the date and amount of the payments they received). Information responsive to these Requests is central to allowing COR Clearing to identify those customers of TDAC who received Calissio due bills to which they were not entitled (due bill payments that have been wrongfully debited from COR Clearing's accounts).

In its response letter, TDAC generally alleged that the Request Nos. 3 and 4 were overbroad and unduly burdensome and seeks information not relevant to COR Clearing's claims, largely, it appears, because TDAC argues that there is no time limitation to these two requests. This objection rings decidedly hollow.

First, such an open-ended interpretation is unwarranted in light of the claims in COR Clearing's complaint. COR Clearing's complaint, on its face, goes to activity taking place in the summer of 2015. The announcement of the dividend, the new stock issuance, the record date, the ex-dividend date, the improper debits from COR Clearing's accounts and corresponding credits to TDAC's accounts—all occurred within the June 2015 to August 2015 timeframe. While relevant information may exist outside of this period (e.g., communications with DTCC regarding remedial efforts or with customers regarding TDAC's perceived validity of the due bills, it does not, as TDAC suggest, stretch back to some unknown time period.

Second, TDAC cannot project an objection to the production of certain information that it contends is irrelevant (i.e., identity of customers **prior** to the 51-day period) to information which is self-evidently relevant (i.e., identity of customers **during** the 51-day period). TDAC has told the Court that it has identified 764 customers who received payments related to due bills attached to Calissio stock. Dkt. No. 41, at *7. It has also already calculated a very significant $934,193.55 total amount of payments made to those 764 customers. TDAC surely cannot

contend to this Court that information as to those 764 customers is not relevant to this action, and its objection to additional information cannot justify its refusal to withhold information as to these 764 customers.

Third, while the scope of the claims in the Complaint is plain, to the extent that TDAC asserts in its opposition that Request Nos. 3 and 4 are overbroad in that they could be construed to encompass individuals who received payments relating to their ownership of Calissio stock prior to the alleged fraud, COR Clearing does not seek information relating to dividends paid by Calissio prior to the time period described in the Complaint.

### 3. **Request Nos. 5 and 6 seek Highly Relevant Information.**

Finally, while Request Nos. 5 and 6 are broader than the other requests in that they seek all communications and documents TDAC may have concerning Calissio, its president Adam Carter, its transfer agent Signature, Calissio stock, Calissio dividends, and the payment of due bills related to Calissio, as well as those communications and documents TDAC may have regarding the underlying lawsuit, COR Clearing and Interested Party Alpine Securities, the relevancy of these documents to the underlying dispute is clear. The underlying suit alleges that Defendants Calissio, Carter, and Signature engaged in a fraudulent scheme utilizing Calissio stock and an inefficiency in DTCC's due bill payment system, which allowed them to defraud COR Clearing (and others, such as Alpine) out of millions of dollars.

As set forth above, the Subpoena seeks information necessary to identify the individuals and companies that improperly profited from Calissio's fraudulent dividend scheme, and necessary to show how much of an improper windfall those customers received. (*See* Ex. A at 8-10.) The Subpoena also seeks TDAC's communications concerning Calissio, other parties, and the transfers that are the subject of this case, which are relevant to COR Clearing's claims that Calissio and

others concealed the nature of their conduct to achieve their fraudulent purpose. *Id.* at 9-10. For instance, and as discussed above, COR Clearing has learned that TDAC was in communication with DTCC regarding the improper due bill payments. (*See* Ex. B.) The communications with DTCC regarding Carter, Calissio, and this action are relevant to determining the scope of the breakdown, and to understanding the full scope of the failure to both uncover and remediate the fraud. Moreover, to the extent that TDAC customers were part of the Calissio buyback program, communications with those customers go directly to COR Clearing's claims for fraud. Thus, Request Nos. 5 and 6 seek information directly relevant to the claims and defenses of the parties to this lawsuit.

TDAC objects to COR Clearing's Request Nos. 5-6 on the basis that information responsive to those Requests is not relevant. The objection is conclusory and general, with no supporting reasoning. Nevertheless, and as shown above, the information sought in Request Nos. 5 and 6 is highly relevant to COR Clearing's claims in this case because the nature of disclosures and communications related to Calissio, the other parties, and the fraudulent transfers goes directly to COR Clearing's claims that Defendants concealed their activities. Thus, TDAC's objections to COR Clearing's subpoena should be overruled and TDAC should be compelled to produce the responsive information.

## IV. CONCLUSION

For the foregoing reasons, COR Clearing respectfully requests that the Court issue an order compelling TDAC to produce all documents in its custody, possession, or control that are responsive to COR Clearing's Subpoena.

Dated: March 28, 2016          By: <u>s/ Michael T. Hilgers</u>
                                         Michael T. Hilgers (#24483)
                                         mhilgers@hilgersgraben.com
                                         Carrie S. Dolton (#24221)
                                         cdolton@hilgersgraben.com
                                         HILGERS GRABEN PLLC
                                         14301 FNB Parkway, Suite 100
                                         Omaha, NE 68154
                                         Telephone: (402) 218-2106
                                         Facsimile: (877) 437-5755

                                         **Attorneys for Plaintiff COR Clearing, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 28, 2016, a true and correct copy of the foregoing was served on opposing counsel of record. Pursuant to Nebraska Civil Rule 5.4(b), service was completed via electronic mail by agreement of the parties.

s/ Michael T. Hilgers
Michael T. Hilgers