IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COR CLEARING, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> CALISSIO RESOURCES GROUP, INC., a Nevada corporation, ADAM CARTER, an individual, SIGNATURE STOCK TRANSFER, INC., a Texas corporation; and DOES 1-50. <br><br> Defendants. | Case No.: 8:15-CV-317 <br><br> **TD AMERITRADE CLEARING, INC.'S BRIEF IN OPPOSITION TO COR CLEARING, LLC'S MOTION TO COMPEL (FILING NO. 94)** |

TD Ameritrade Clearing, Inc. submits this Brief in response to COR Clearing, LLC's ("COR") Motion to Compel TD Ameritrade Clearing, Inc. ("TDAC") to produce documents responsive to COR's subpoena served on or about December 4, 2015 (Filing No. 94) ("Motion to Compel").

## INTRODUCTION AND SUMMARY OF ARGUMENT

COR Clearing ("COR") seeks improper document production from TDAC by means of a subpoena served on or about December 4, 2015. The document requests included in the subpoena are vague, overbroad, unduly burdensome, and exceed the scope of the claims and defenses at issue in this case. After the subpoena was issued, TDAC acted in good faith and attempted to resolve this matter by offering to produce some, but not all, of the information requested pursuant to the subpoena. Specifically, TDAC was willing to provide customer account transaction information for the time period at issue as identified by COR, with the exception of customer identifying information. COR refused to accept the production absent customer names, and the Motion to Compel was filed shortly thereafter.

**STATEMENT OF FACTS**

The facts of this case were provided to the Court previously, in great detail, both by COR and TDAC. For purposes of the dispute related to the subpoena at issue, TDAC highlights the following pertinent facts.

This action was commenced on August 26, 2015 by COR, a clearing and settlement firm based in Omaha, Nebraska. In this action, COR seeks to recover roughly $4 million from Calissio Resources Group, Inc. ("Calissio"), Calissio's CEO Adam Carter ("Carter"), and Calissio's stock transfer agent Signature Stock Transfer, Inc. ("Signature Stock") (collectively "Defendants"). In its Complaint, COR alleges that it was the victim of "Defendants' calculated scheme to defraud the marketplace and the clearing system in order to obtain millions of dollars from unsuspecting market participants...." (Filing No. 1, Complaint ¶ 1). Defendants' scheme, according to COR, was perpetrated in connection with a $.011 per share cash dividend on Calissio's stock to be distributed on August 17, 2015 (the "payable date") to the holders of record of its stock as of close of business on June 30, 2015 (the "record date").

COR seeks to recover the charges, which were made to its clearing account by the Depositary Trust Clearing Corporation ("DTCC"), in connection with the "conversion" and subsequent sale of roughly 400 million shares of Calissio stock from July 29, 2015 through August 19, 2015. COR Clearing previously filed an "<u>Expedited</u> Motion for Order Appointing Receiver" (the "Receiver Motion") (Filing No. 20) (emphasis in original) after Calissio and its CEO failed to respond to the Complaint. The motion, supported by only a scant evidentiary record, sought an order from this Court allowing COR Clearing to reverse the $4 million charge DTCC made to its clearing account. The Receiver Motion was denied on November 10, 2015 (Filing No. 80).

After the Receiver Motion was denied, COR served a subpoena on TDAC on or about December 4, 2015. (Filing No. 96-2) The information sought includes the identification of all TDAC customers, by name, to which TDAC sold or transferred any share of Calissio stock between and including June 20, 2015 and August 19, 2015. TDAC opposed the subpoena on December 17, 2015, citing, among other reasons, the fact that the requests were not limited in time or scope and also that TDAC was unable to identify some of the information requested. (Filing No. 96-3)

Counsel for COR and TDAC subsequently conferred on a number of occasions to determine whether a compromise could be reached without the intervention of this Court. In an attempt to reach said compromise, TDAC offered to provide a spreadsheet detailing the transactions at issue for the time period identified, June 20, 2015 through August 19, 2015. The information to be produced would include the record date for the transaction, the date the order was executed, the type of transaction (buy/sell/settled quantity/dividend), the number of shares involved in the transaction, and the amount involved in the transaction. Despite these efforts, COR was unwilling to accept the proposed response unless TDAC was willing to identify their customers, by name, involved in the subject transactions.

This Brief is submitted on behalf of TDAC. TDAC respectfully submits that the Motion to Compel should be denied for the following reasons, which are discussed in more detail below. First, the information sought is not relevant to this lawsuit and is beyond the scope of discovery. Second, the requests are vague, overly broad, and unduly burdensome. Third, TDAC customer privacy interests outweigh the likely benefits of the production. Fourth, TDAC is prepared to provide responsive information, absent any client identifying information.

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 26(b) allows for broad discovery of "any nonprivileged matter that is relevant to any party's claim or defense…." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Although the scope of discovery is broad, it is still limited by Rule 26(b)(1) which specifically states that the scope is as stated in the Rule "[u]nless otherwise limited by court order." Fed. R. Civ. P. 26(b)(1). Furthermore, Rule 26(b)(2)(C) provides that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules," if it determines: the discovery can be obtained from another source that is more convenient, less burdensome, or less expensive; the party has ample opportunity to obtain the discovery in the action; or, the proposed discovery is outside the scope permitted by Rule 26(b)(1). The proponent of discovery must make "[s]ome threshold showing of relevance… before parties are required to open with the doors of discovery and produce a variety of information which does not reasonably bear on the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

"Determinations of relevance in discovery rulings are left to the sound discretion of the trial court…." *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir. 1984); *see also State v. American Broadcasting Companies, Inc.*, 802 F.Supp.2d 22, 26 (D.D.C. 2011) ("As a whole, 'Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.' And '[i]t is appropriate for the court, in exercising its discretion…, to undertake some substantive balancing of interests.'") (*quoting In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215 (D.C.Cir. 2004) (internal quotations omitted)). Furthermore, "the standards for nonparty discovery require a

stronger showing of relevance than for simple party discovery." *Stamy v. Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990).

## ARGUMENT

TDAC objects to the COR subpoena because (1) COR has made no showing as to why production of TDAC customer identifying information is relevant to its claim or defense; (2) the requests are vague, overly broad, and unduly burdensome; (3) the nature of the document production sought from TDAC (customer identities linked to their financial records) outweighs its likely benefits; and, (4) TDAC is willing to provide responsive transaction information, absent customer identifying information, in response to the subpoena.

### I.     **TDAC Customer Identities are Not Relevant to COR's Claims**

In its brief in support of its Motion to Compel, COR discusses in great detail the purported fraud underlying this case. COR identifies the alleged bad actors as Calissio, Carter, and Signature Stock. COR describes their actions as a "scheme to defraud" COR and others by issuing and receiving improper dividend payments and related due bills. (Filing No. 95, COR Redacted Brief in Support of its Motion to Compel ("COR Br.") at p. 3) (footnote omitted) According to COR, the fraud was allegedly perpetrated by taking advantage of a "weakness in the due bill system" implemented by DTCC. (Filing No. 95, COR Br. at p. 3). COR goes on to state that it was the DTCC that "assessed and paid due bills on all shares of Calissio stock that transacted between June 30 and August 19." (Filing No. 95, COR Br. at p. 4) (emphasis added). That "resulted in a massive error that took money belonging to COR Clearing and others out of the accounts at DTCC and paid it into the accounts of other DTCC members such as TDAC who were not entitled to it, which parties in some cases paid these amounts forward to the brokers and

5

customers who had initiated the purchases of the shares." (Filing No. 95, COR Br. at p. 4) (emphasis added).

Nowhere in COR's brief do they state that TDAC customers were knowingly involved in the alleged fraudulent activity. In fact, COR previously took the opposite position:

> … COR Clearing does not assert *any* claims against Calissio shareholders. To the contrary, as discussed above, COR Clearing asserts a valid claim against Calissio (and the other Defendants) because its fraudulent scheme caused DTCC to erroneously transfer funds from COR Clearing's accounts to purchasers who were not entitled to receive dividends.

(Filing No. 51, COR Reply regarding Motion to Appoint Receiver at p. 6) (emphasis in original) (internal citation omitted). COR does not identify any TDAC customers who were bad actors or otherwise identify a good basis as to why TDAC, a nonparty, should be required to turn over sensitive financial records of its customers.

Furthermore, COR previously argued to this Court that appointing a receiver would not impact shareholders. (Filing No. 74, COR Supplemental Replay regarding Motion to Appoint Receiver at p. 1) Rather, reversing the debit to COR's accounts "would unquestionably reverse the credit of the respective DTCC member firms which previously received an unearned windfall from COR Clearing… it does not necessarily follow that all or any of the shareholders will be impacted by the reversal of the member firms' credits." (Filing No. 74 at pp. 1-2) COR went on to state:

> Member firms understand that by allowing their customers to trade in the speculative penny-stock market they take on certain risks and responsibilities. If a customer would otherwise be harmed by undoing a dividend to which she was not entitled, then the member firm may determine that it cannot undo that transaction because of its legal responsibilities to its customers. In either case, those decisions are between the member firm and its customers; COR Clearing is not a guarantor of the member firms' responsibilities to their customers.

(Filing No. 74 at p. 2).

With respect to the subpoena, COR does not provide an explanation as to why TDAC customer names, in addition to the underlying transaction history, are necessary for COR to pursue its fraud claim against Defendants. If it is COR's contention that TDAC customers knew about and actively participated in the "scheme to defraud," they have stopped short of making that argument and, as discussed above, previously took a contrary position. Rather, the money that came into TDAC customer accounts, according to COR, was the result of Defendants' fraud and exploitation of the DTCC system, resulting in the "massive error" which COR now complains of. COR knows the identities of the clearing firms who received credits (Filing No. 74 at p. 2) and can seek information related to the transaction history from each of those firms, including TDAC. However, COR fails to provide any basis for producing customer identifying from a nonparty.

## II. The Document Requests are Vague, Overbroad, and Unduly Burdensome

The document production sought by the COR subpoena is broken into six requests, several of which have multiple subparts. The first two requests seek the following documents:

1. Documents sufficient to identify all individuals, business, and entities to which You sold or transferred any share of Calissio stock between and including June 30, 2015, and August 19, 2015.

2. For all individuals, business, and entities to which You sold or transferred any share of Calissio stock between and including June 30, 2015, and August 19, 2015, documents sufficient to show the following:
   a. The date and amount of each such transfer;
   b. The issue date of each and every such share of Calissio stock sold or transferred by You;
   c. All date(s) on which each identified individual, business, or entity purchased or acquired each share of stock issued by Calissio, and the number of shares purchased or acquired on each such date;
   d. All date(s) on which each identified individual, business, or entity sold or transferred each share of stock issued by Calissio, and the number of shares sold or transferred on each such date.

TDAC objected to these requests because they are vague and the term "transferred" is not defined in the subpoena. In addition, TDAC did not "sell or transfer" Calissio stock during the relevant time period and TDAC is unable to determine the issue date of Calissio stock held in its customer accounts. (Declaration of Chad Johnsen at ¶¶ 4-5) Regardless of the objection, and as noted above, TDAC was willing to provide transaction information regarding Calissio stock held in its customer accounts for the time period identified in the requests.

The third and fourth requests set forth in the subpoena are as follows:

3. Documents sufficient to identify all of Your customers and clients who received any transfer, payment, debit, or credit relating to their ownership, possession, or control of stock issued by Calissio.

4. For all of Your customers and clients who received any transfer, payment, debit, or credit relating to their ownership, possession, or control of stock issued by Calissio, documents sufficient to show the following:
   a. The date and amount of each such monetary transfer, payment, debit or credit;
   b. The issue date of each and every share of stock issued by Calissio owned, possess [sic], or controlled by such customers and clients;
   c. All date(s) on which each customer purchased or acquired each share of stock issued by Calissio, and the number of shares purchased or acquired on each such date;
   d. All date(s) on which each identified customer sold or transferred each share of stock issued by Calissio, and the number of shares sold or transferred on each such date.

COR seeks a response to request numbers 3 and 4 "in order to identify those customers of TDAC who received Calissio due bills to which they were not entitled (due bill payments that have been wrongfully debited from COR Clearing's accounts)." However, requests numbers 3 and 4 are not limited to the relevant dates identified in this lawsuit, June 30, 2015 through August 19, 2015, which include the record date, payable date, and dates during which the alleged conversion occurred. COR has not provided any argument with respect to why transaction information outside those dates is relevant to this lawsuit. In addition, the requests are unduly burdensome in that they are not limited whatsoever as to scope, i.e., the requests require TDAC

to search all customer accounts, on all dates, and produce information regarding the entire transaction history for any share of Calissio stock owned by a customer.

Finally, COR seeks documents responsive to request numbers 5 and 6 which also seek "highly relevant" information. The documents sought through those requests are the following:

5. All documents constituting or relating to any communications between You and any person, individual, introducing firm, broker, dealer, regulatory agency, or entity, including, without limitation, DTCC and FINRA, concerning any of the following:
    a. Calissio;
    b. Stock issued by Calissio;
    c. Any dividend, actual or prospective, related to Calissio;
    d. Any payment in respect of due bills, actual or prospective, related to Calissio;
    e. Signature;
    f. Carter;
    g. Any transfers, payments, debits, or credits related to Calissio, stock issued by Calissio, or any due bills related to Calissio;
    h. COR Clearing;
    i. Alpine;
    j. The Lawsuit.

6. All documents, including communications, concerning any of the following:
    a. Calissio;
    b. Stock issued by Calissio;
    c. Any dividend, actual or prospective, related to Calissio;
    d. Any payment in respect of due bills, actual or prospective, related to Calissio;
    e. Signature;
    f. Carter;
    g. Any transfers, payments, debits, or credits related to Calissio, stock issued by Calissio, or any due bills related to Calissio;
    h. COR Clearing;
    i. Alpine;
    j. The Lawsuit

COR argues that documents responsive to these requests are necessary in order to identify the individuals and entities that "improperly profited from Calissio's fraudulent dividend scheme, and necessary to show how much of an improper windfall those customers received." (Filing No. 95, COR Br. at p. 10). TDAC acknowledges that the <u>amount</u> of any transfers resulting from Defendants' alleged fraudulent activities may be relevant to COR's underlying

claims. However, that is not what COR is seeking. Instead they have requested all communications between TDAC and its employees, representatives, and customers, as well as parties and nonparties to this action. For several reasons, COR's Motion to Compel production of documents responsive to these requests should be denied.

First, request numbers 5 and 6 seek all communications between TDAC and any person or entity regarding Calissio, Calissio stock, transactions related to Calissio stock, the parties to this lawsuit, or the lawsuit itself. The requests are both vague and very broad. Without limiting the same, TDAC, a nonparty to this lawsuit, would be required to produce documents governed by the attorney-client and work product privileges, as well as communications between TDAC and its regulators. COR provides no justification for invading such privileges and sensitive relationships.

Second, any communications between TDAC and Defendants should first be sought from Defendants, parties to this action that have custody and control over the requested information. *Bengelsdorf, et al., v. Lumenis*, No., 3:09-0911, 2011 WL 617118 at *4 (M.D.Tenn. 2011) (denying third party subpoena to accounting firm when the response would (1) almost certainly result in the disclosure of a great deal of confidential financial information that is unrelated to the claims in the case, and (2) the information sought was in the custody or control of a party to the lawsuit who employed accounting firm.)

Third, COR offers no justification for obtaining communications between TDAC and other nonparties to this lawsuit. As noted above, the rationale provided by COR is to identify the individuals and entities that received funds resulting from Defendants' fraudulent activities. However, COR does not argue that those individuals and entities were active participants in the "fraudulent scheme." COR believes that funds were channeled to TDAC as a result of

Defendants' alleged fraudulent activity, which included taking advantage of the DTCC system. Whether COR does or does not know the identities of the individual customers at TDAC who bought or sold shares of Calissio stock during the relevant time period has no bearing on COR's claims.

Finally, COR points to an email sent by a DTCC representative to a representative of TDAC in support of their Motion to Compel TDAC's subpoena response. (*See* Exhibit B offered in support of COR's Motion to Compel, filed as a restricted document pursuant to Filing No. 100) The email was sent approximately two weeks after the relevant time period identified by COR ended. According to COR, "the Subpoena seeks information necessary to identify the individuals and companies that improperly profited from Calissio's fraudulent scheme, and necessary to show how much of an improper windfall those customers received." (Filing No. 95 at p. 10) Based on the stated purpose of the subpoena, the timing of the communication, which falls outside of the time period when the subject transactions occurred, as identified by COR, is irrelevant to COR's claims in this matter. In addition, the requests for communications between TDAC and any other "person, individual, introducing firm, broker, dealer, regulatory agency or entity, including, without limitation, DTCC and FINRA" regarding COR, the defendants, and a number of other entities and subject matters, is not limited in time or scope. (Filing No. 96-2 at p. 10) Accordingly, the request is overbroad and should be denied.

  **III.** **<u>TDAC Customer Privacy Interests Outweigh the Likely Benefits of Production</u>**

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure "authorize[es] courts to set limits on discovery based on equitable concerns." *Slate v. American Broadcasting Companies, Inc.*, 802 F.Supp.2d 22 (D.D.C. 2011) (*quoting United States v. Jicarilla Apache Nation*, 131 S.Ct. 2313, 2338, 180 L.Ed.2d 187 (2011)). "Although [Rule 26(c)] contains no specific

11

reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." *Id.* (*quoting Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n. 21, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)).

TDAC's relationship to this case is tangential. It is not a party, nor is it likely to become one. TDAC has no stake in the litigation and no strategic incentive to delay its response to COR's subpoena. TDAC attempted to reach a compromise with COR; however, the parties could not reach an agreement regarding the production of customer identifying information. TDAC's customers were never served with a subpoena, yet it is their names and related financial records which would be produced if COR's Motion to Compel is granted. TDAC's customers are essentially unrepresented non-parties to this lawsuit with no practical ability to assert their interests and COR offers no justification for infringing on their individual privacy rights. Accordingly, the Motion to Compel should be denied.

## IV. TDAC is Willing to Produce Transaction Information for the Relevant Time Period

As noted above, TDAC is willing to provide customer transaction information for the relevant time period: June 30, 2015 through August 19, 2015. The information provided would not include customer identifying information; however, it would provide COR with TDAC customer transaction history related Calissio stock for the identified time period. An example of the type of information which TDAC is willing to produce has been filed with the Court in support of this opposition. (TDAC Account Transaction Information (excerpt) attached to the Declaration of William F. Hargens as Exhibit "A").

## CONCLUSION

For the foregoing reasons, TD Ameritrade Clearing, Inc. respectfully requests that the Court deny COR Clearing, LLC's Motion to Compel (Filing No. 94).

Dated this 19th day of April 2016.

                              TD AMERITRADE CLEARING, INC.

                              By: s/William F. Hargens
                                  William F. Hargens (#16578)
                                  Elizabeth B. Smith (#23799)
                                  McGrath North Mullin & Kratz, PC LLO
                                  First National Tower, Suite 3700
                                  1601 Dodge St.
                                  Omaha, Nebraska 68102
                                  Phone: (402) 341-3070
                                  Fax: (402) 341-0216
                                  whargens@mcgrathnorth.com

                                  *Attorneys for TD Ameritrade Clearing, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 19th, 2016, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system, which will send a notice of electronic filing to the following:

Andrew G. Smith
agsmith@winston.com

Saul S. Rostamian
srostamian@winston.com

David L. Aronoff
daronoff@winston.com

Michael T. Hilgers
mhilgers@goberhilgers.com

Carrie S. Dolton
cdolton@goberhilgers.com

Gail E. Boliver
boliver@boliverlaw.com

                                                                                                              s/William F. Hargens
                                                                                                              William F. Hargens