EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**

| | |
|---|---|
| COR CLEARING, LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br> v.<br><br>CALISSIO RESOURCES GROUP, INC., a Nevada corporation; ADAM CARTER, an individual; SIGNATURE STOCK TRANSFER, INC., a Texas corporation; NATIONAL FINANCIAL SERVICES, LLC, a Delaware limited liability company; TD AMERITRADE CLEARING, INC., a Nebraska corporation; SCOTTRADE, INC., an Arizona corporation; E-TRADE CLEARING, LLC, a Delaware limited liability company; and DOES 1-50. | **Case No. 8:15-CV-317**<br><br>~~FIRST~~ **SECOND AMENDED COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF AND IMPOSITION OF CONSTRUCTIVE TRUST**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

  Plaintiff COR Clearing, LLC ("Plaintiff" or "COR Clearing"), by its attorneys, for its First Amended Complaint against Defendant Calissio Resources Group, Inc. ("Defendant" or "Calissio"), its President Adam Carter ("Carter"), its transfer agent Signature Stock Transfer, Inc. ("Transfer Agent") (collectively, the "Calissio Defendants"), and four brokerages, National Financial Services, LLC ("NFS"), TD Ameritrade Clearing, Inc. ("TDAC"), E-Trade Clearing, LLC ("E-Trade"), and Scottrade, Inc. ("Scottrade") (collectively, the "Brokerage Defendants"), alleges as follows:

**INTRODUCTION**

  1.  This is an action to recover proceeds of a fraudulent dividend scheme orchestrated by the Calissio Defendants that caused harm to COR Clearing and its customers in the amount of approximately $4 million.  As a result of the Calissio Defendants' scheme, debits were made to

COMPLAINT

COR Clearing's account by the Depository Trust and Clearing Corporation ("DTCC") for the purpose of paying fraudulent due bills to Calissio and its co-conspirators and affiliates. Corresponding credits were then made by DTCC to brokerages holdings shares of Calissio stock, including the Brokerage Defendants, for further distribution to their customers, which on information and belief included Calissio and its co-conspirators and other purchasers of the Calissio shares not entitled to these proceeds. By way of default judgment against Defendant Calissio, this Court has adjudicated the Calissio Defendants' conduct as a fraud and entered Judgment thereon in favor of Plaintiff. The inescapable conclusion is that funds credited to the Brokerage Defendants for payment of the Calissio due bills constitute the proceeds of fraud and rightfully belong to Plaintiff.

2.      Plaintiff now seeks – in addition to any recovery from the Calissio Defendants – to recover against funds held by the Brokerage Defendants, who were unjustly enriched when DTCC debited COR Clearing's account and made corresponding credits to the Brokerage Defendants' accounts for payment of the fraudulent Calissio due bills. Plaintiff is able to trace the exact funds that were deposited in the Brokerage Defendants' accounts for payment of the Calissio due bills. Plaintiff is therefore entitled to, and hereby requests, the imposition of a constructive trust over these funds, which equity dictates be returned to Plaintiff.

### OVERVIEW OF THE CALISSIO DEFENDANTS' FRAUDULENT SCHEME

3.      This case arises out of the Calissio Defendants' calculated scheme to defraud the marketplace and the clearing system in order to obtain millions of dollars from unsuspecting market participants by exploiting a weakness in the dividend and due bill payment system of the third-party DTCC. Specifically, under the guise of what they claim to be a mere mistake, the Calissio Defendants have defrauded COR Clearing and its customers by issuing hundreds of millions of shares of Calissio stock after declaring a dividend on all common shares outstanding prior to the issuance, then repurchasing hundreds of millions of these new shares (both on its own and through its affiliates), and relying on DTCC's dividend and due bill payment system to fail to distinguish between shares entitled to dividends and those not so entitled. The Calissio

2

~~FIRST~~ SECOND AMENDED COMPLAINT

Defendants capitalized on this circumstance when DTCC thereby paid to the brokerage firms of Calissio and other purchasing shareholders due bills (in respect of dividends never paid nor intended to be paid) with proceeds taken from member firms such as COR Clearing who settled sale transactions on behalf of their customers.  Calissio's feigned mistake hardly serves to conceal what the facts show to be its conscious effort to deceive its shareholders into selling their shares of Calissio stock back to the company unaware that DTCC would charge them for the amount of a due bill on sales of shares not entitled to dividends, and then to claim substantial, yet unwarranted, proceeds from the due bills from unwary sellers and their clearing firms, such as COR Clearing.

4.     Here, Defendant Calissio, through DTCC, has taken from COR Clearing as much as $4 million to pay due bills presumed by DTCC to be owed to purchasing shareholders of the hundreds of millions of new shares in connection with Calissio's buy-back of its own stock from customers of COR Clearing's introducing broker-dealers.  The problem is, Calissio is admittedly not entitled to such dividends, and nor are the other purchasers of the shares held by COR Clearing.

5.     Specifically, Nobilis Consulting LLC ("Nobilis"), a customer of one of COR Clearing's introducing broker dealers, J.H. Darbie & Co., Inc. ("Darbie"), never received a dividend on the over 327 million shares of Calissio's stock it held at COR Clearing, as none was owed on these shares.  This customer then sold these shares on the open market.  These shares were sold—with COR Clearing standing in its shoes for the transaction—and Calissio repurchased hundreds of millions of these shares at a price, based on the information presented by Calissio, indicating that no dividend was owed on the shares.

6.     After the sale, DTCC informed COR Clearing that it would charge it with over $3.3 million in due bills, and DTCC debited COR Clearing that amount.

7.     The day after the debit took place, after COR Clearing informed DTCC that no due bills were owed for these share sales, the president of Calissio, Adam Carter, purported that there was "a huge glitch/error on how the dividend was supposed to be paid out," and he pledged

3

~~FIRST~~ SECOND AMENDED COMPLAINT

to resolve this supposed inadvertence.  He also said, "this was a problem created by FINRA and not . . . Nobilis Consulting LLC."  Yet, despite this, Calissio has yet to return the money collected by DTCC from COR Clearing.

8.      On information and belief, the Calissio Defendants perpetrated this scheme in connection with Calissio shares sold by COR Clearing on behalf of Beaufort Capital Partners ("Beaufort"), another customer of Darbie, in that instance improperly debiting as much as $700,000 in due bills.

9.      In sum, Calissio's retention of some or all of the over $4 million charged to COR Clearing's accounts, notwithstanding its admission that it is not entitled to same, is an indication of Calissio's intent to stall any legal action by COR Clearing, in order to further the fraud being perpetrated.

10.     Through its fraud, Calissio has retained some or all of $4 million from COR Clearing to which it has admitted it is not entitled.  The Brokerage Defendants are also in possession of the proceeds of the fraud, including some or all of the $4 million improperly credited to purchasers.  COR Clearing is entitled to restitution of these funds and imposition of a constructive trust as to the Brokerage Defendants for return of funds rightfully belonging to COR Clearing.

## HISTORY OF THIS ACTION

11.     On August 24, 2015, COR Clearing notified DTCC via letter that the due bill payments DTCC planned to make, corresponding to shares of Calissio stock that were not in existence as of the dividend record date of June 30, 2015, would be erroneous and result in irreparable harm to COR Clearing and its customers, who obtained the shares and sold them in the marketplace prior to payment of the planned dividend.  Despite notification from COR Clearing, DTCC proceeded with payment of the erroneous due bill and collected improper due bills from COR Clearing in the amount of approximately $4 million.

12.     After DTCC failed to stop the fraudulent due bill payout, COR Clearing filed its original Complaint in this action on August 26, 2015, asserting claims against the Calissio

4

~~FIRST~~ SECOND AMENDED COMPLAINT

Defendants for declaratory relief, unjust enrichment, and fraud.

13.     Upon filing of the lawsuit, Calissio was nowhere to be found.  Calissio did not ever appear in this lawsuit, and on September 25, 2015, the Clerk entered default against Defendant Calissio.

14.     Plaintiff then pursued additional avenues to obtain redress for the harms it suffered as a result of the Calissio Defendants' fraud.  Specifically, on October 5, 2015, Plaintiff filed a Motion to Appoint Receiver in this action for the limited purpose of directing DTCC to reverse the fraudulent Calissio due bill payments.  As part of its receivership motion, COR Clearing served notice on interested parties who would be affected by the reversal of the fraudulent due bills, including each of the Brokerage Defendants.

15.     On November 10, 2015, the Court denied the Motion to Appoint Receiver, finding that Plaintiff "has failed to sufficiently establish its extreme burden to satisfy the extreme remedy it seeks."  The Court did not make any factual findings in denying the motion.

16.     Nevertheless, Plaintiff continued to diligently pursue the proceeds of the fraud. To that end, Plaintiff subpoenaed various banks and brokerages, including the Brokerage Defendants, to trace the proceeds of the Calissio fraud and thereby determine which entities were unjustly enriched as a result of the fraud.  Plaintiff also sent letters to the various brokerages, including the Brokerage Defendants, demanding return of funds that were wrongfully taken from Plaintiff.  Many brokerages indicated that they could not return the funds without an order of the Court, including Defendant NFS.  Plaintiff also recently took the deposition of DTCC.

17.     Around the same time that Plaintiff subpoenaed various brokerages, on April 20, 2016, Plaintiff filed an application for a default judgment in this action as to Defendant Calissio. The Court entered Judgment against Calissio the next day and made factual findings confirming the allegations in the Complaint and confirming that the Calissio due bill payments are the fruits of a fraudulent scheme, were improper, and should not have been debited from COR.

18.     On May 10, 2016, counsel for Plaintiff sent a letter to brokerages identified during discovery to have received fraudulent Calissio due bills, including the Brokerage

5

~~FIRST~~ SECOND AMENDED COMPLAINT

Defendants, notifying them that Plaintiff had claims for unjust enrichment against them and demanding that the funds be remitted to COR.  Certain banks complied; others, including the Brokerage Defendants, refused to cooperate.  As such, Plaintiff is forced to bring this Amended Complaint to impose a constructive trust over the fraudulent dividends received by the Brokerage Defendants at COR Clearing's expense.

## **PARTIES**

19.     Plaintiff COR Clearing is a Delaware limited liability company.  The sole member of COR Clearing, LLC is COR Securities Holdings, Inc., a Delaware Corporation with its principal place of business in California.  Plaintiff COR Clearing is therefore a citizen of Delaware and California.

20.     COR Clearing is an independent full-service clearing and settlement firm.  COR Clearing serves approximately 90 introducing brokers in all 50 states and holds assets in custody exceeding $7 billion.  COR Clearing provides technology, administrative services, and product offerings through multiple customized platforms.  As a correspondent clearing firm, COR Clearing's principal business is the provision of custody and settlement services to introducing broker dealers such as Darbie and their end customers such as Nobilis and Beaufort.

21.     Defendant Calissio, formerly Amarium Technologies, Inc., is a Nevada corporation with its principal place of business in Las Vegas, Nevada.

22.     On information and belief, Adam Carter in an individual residing in Las Vegas, Nevada, and he is President of Calissio.

23.     Signature Stock Transfer, Inc. is a Texas corporation with its principal place of business in Plano, Texas.

24.     NFS is a Delaware limited liability company.  Upon information and belief, the sole member of NFS is Fidelity Global Brokerage Group, Inc., a Massachusetts corporation with its principal place of business in Boston, Massachusetts.  NFS is therefore a citizen of Massachusetts.

~~FIRST~~ SECOND AMENDED COMPLAINT

25.     TDAC is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

26.     Scottrade is an Arizona corporation with its principal place of business in St. Louis, Missouri.

27.     E-Trade is a Delaware limited liability company.  The sole member of E-Trade is E-Trade Bank, a federally-chartered savings association with its home office in Arlington, Virginia.  E-Trade is therefore a citizen of Virginia.

<u>JURISDICTION AND VENUE</u>

28.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as there is complete diversity of citizenship among Plaintiff COR Clearing – a citizen of Delaware and California – and each of the Defendants, and the aggregate amount in controversy, being over $4 million, exceeds the jurisdictional amount of $75,000.00.

29.     This Court has personal jurisdiction over Defendants because Defendants purposefully directed their actions to Nebraska to harm COR Clearing in this forum by having DTCC pursue COR Clearing for the funds, which were paid from its accounts in Nebraska. Moreover, this Court has jurisdiction over Brokerage Defendants because they maintain systematic and continuous contacts, and regularly conduct business via their online brokerage platforms, in this jurisdiction.  Because of these contacts with this forum, assertion of jurisdiction to remedy Defendants' conduct does not offend traditional notions of fair play and substantial justice.

30.     Venue is appropriate in the District of Nebraska pursuant to 28 U.S.C. § 1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

<u>BACKGROUND</u>

**Calissio's Scheme to Defraud Shareholders**

31.     On information and belief, on September 30, 2010, Calissio entered into an agreement with Industrias Calissio SUR SA for a total of 450 million shares to be issued at a cost

7

basis of $.01.

32.     On information and belief, on June 1, 2015, Calissio announced a program to buy

back its shares, and it proceeded to buy back millions of its outstanding shares.  On information

and belief, certain of Calissio's affiliates also purchased shares as part of this program or

otherwise.

33.     Calissio announced a quarterly dividend payment to be distributed on August 17,

2015, consisting of a cash dividend of $0.011 per common share, to be paid to the holders of the

issued and outstanding Common Shares as of the close of business on June 30, 2015, and a stock

dividend of 3% to be paid to shareholders of record at the close of business on June 30, 2015 (the

"June 30, 2015 record date").

34.     On information and belief, after the June 30, 2015 record date had come and

gone, Calissio and Transfer Agent converted Calissio's debt into even more shares, which totaled

approximately four times the number of shares outstanding as of the June 30, 2015 record date.

35.     Calissio issued press releases regarding the dividend and the buyback program,

but did not mention this deluge of additional shares, which it also repurchased, on its own and

through affiliates, as part of its buyback program.  Instead, Calissio, Carter, and Transfer Agent

kept this issuance silent, notifying no one outside their inner circle of conspirators.

36.     Because these new shares were issued after the June 30, 2015 record date, they

were not eligible for the dividends attached to the previous shares.

37.     Indeed, due to the massive dump of new stocks after the June 30, 2015 record

date, four out of every five Calissio shares publicly traded were ineligible for a dividend.

38.     Pursuant to standard procedure, the payment date for the dividends on the eligible

shares was August 17, 2015, and the shareholders who were entitled to those dividends were

those that owned the shares as of August 19, 2015 (the "ex-dividend date").

39.     Pursuant to mandatory procedure, if a shareholder of record as of the June 30,

2015 record date sold its shares after the June 30, 2015 record date, but before the August 19,

2015 ex-dividend date, it also sold its right to receive the dividend.  The right to receive the

~~FIRST~~ SECOND AMENDED COMPLAINT

dividend was thus attached to the shares as what is known as a due bill.

40.     Because the only information available to an issuer at the ex-dividend date as to the owner of the shares is the name of the shareholder of record as of the earlier record date, it issues the dividends to those entities.  If that shareholder sold the shares after the record date but before the ex-dividend date, pursuant to standard procedure, an amount equal to the dividend is debited from any selling shareholder after the record date and credited to the shareholder who had purchased the shares and therefore owns these on the ex-dividend date.

41.     On information and belief, because Calissio, and its affiliates, purchased the vast majority of the common shares outstanding on the ex-dividend date back from shareholders before the ex-dividend date as part of its buyback program, a large percentage of the newly issued shares ineligible for a dividend are owned by Calissio.

42.     To collect due bills owed to purchasers of shares after the June 30, 2015 record date, DTCC collected the due bills from the shareholders of record, or more specifically, from the clearing firms and brokerages who held and transacted the shares on their behalf.  According to procedure, DTCC paid due bills to the member firms that purchased shares on behalf of their customers Calissio and the other purchasers with amounts DTCC debited from the accounts of member firms that settled sale transactions on behalf of their customers.

43.     However, as a result of DTCC's procedures, DTCC levied due bills and paid the proceeds to the member firms representing purchasers like Calissio on all shares on its system— including the 80% of shares that were issued after the June 30, 2015 record date that were not dividend-eligible.

44.     Accordingly, DTCC collected due bills from entities that had sold non-dividend-eligible shares to Calissio, its affiliates and other purchasers before the ex-dividend date, even though those sellers had not received any dividends themselves from Calissio as dividend-issuer. This obviously created a scenario where Calissio and its co-conspirators were being credited with due bills on the basis of shares that were not dividend-eligible, causing a windfall to Calissio and its affiliates, and a loss to the sellers.

FIRST SECOND AMENDED COMPLAINT

45.     On information and belief, Calissio, Carter, and Transfer Agent were aware of the fact that DTCC was collecting due bills for it on non-dividend-eligible shares that Calissio and its affiliates had repurchased, as Calissio was the one who authorized the dividend and knew which shares were eligible and which were not eligible.  However, Calissio, Carter, and Transfer Agent intended to defraud the sellers, the clearing system, and indeed the marketplace by failing to provide this information to DTCC or the sellers of those shares.  The reason was simple – Defendants' artifice of fraud was to perpetrate this scheme for the precise purpose of collecting additional due bills from unsuspecting sellers and their clearing firms.

46.     On information and belief, Calissio also benefited from this scheme, and harmed the sellers, in another way.  Specifically, Defendants' fraud on the marketplace allowed Calissio and its affiliates to purchase shares in Calissio's buyback program for substantially less than the value of the dividend payable on each share.  Because the sellers of the shares did not believe that they owed any due bills on these shares, they did not factor these costs into the consideration of their sale prices to Calissio and its affiliates.  Defendants engaged in these purchases in furtherance of their fraudulent scheme.

47.     On information and belief, Calissio repurchased at least 177 million of its shares by the ex-dividend date (and its affiliates likely purchased additional shares), the majority of which were not dividend-eligible (a fact known to Calissio, which itself authorized the dividends in the first place).

**Sale of Calissio Shares by COR Clearing's Customer to Calissio**

48.     Between July 29, 2015, and August 19, 2015, Nobilis obtained over 327 million shares of stock in Calissio through a conversion of a private debt instrument to equity and deposited these shares with COR Clearing, which provides clearing services to Nobilis's broker Darbie.

49.     In approximately the same timeframe, another customer of Darbie, Beaufort, obtained over 150 million shares in the same way and also deposited these shares with COR Clearing.

FIRST SECOND AMENDED COMPLAINT

50.     All 327 million of Nobilis's shares and 150 million of Beaufort's shares were issued after the June 30, 2015 record date, and therefore neither Nobilis nor Beaufort received dividends on any of these shares, as none were owed to them.

51.     On information and belief, subsequent to obtaining the Calissio shares, Nobilis and Beaufort sold some or all of these shares back to Calissio and/or its affiliates (or other entities which ultimately sold them to Calissio) by placing sale orders with Darbie which Darbie executed and COR Clearing settled with the market through DTCC.

52.     For this transaction, COR Clearing as a correspondent clearing firm settled the sale transactions with the market through its account with DTCC on behalf of Darbie and its customers Nobilis and Beaufort.

53.     Having no reason to believe any dividend was owed on these shares, because they were issued after the June 30, 2015 record date and were thus ineligible for dividends, COR Clearing settled the sale orders issued by Darbie on behalf of Nobilis and Beaufort for gross proceeds totaling approximately $700,000.

54.     On information and belief, at least 177 million of these shares were purchased by Calissio and/or affiliates of Calissio, either from Nobilis and Beaufort or from the initial purchasers of Nobilis and Beaufort's shares, as part of Calissio's fraudulent scheme.

**DTCC's Improper Demand for Due Bill Payments & Attempted Cover-Up**

55.     On August 21, 2015, DTCC contacted COR Clearing and debited COR Clearing's account at DTCC for over $3.3 million in respect of Nobilis's sale of Calissio shares— significantly more than the amount of the proceeds from the sale of the shares—some or all of which was purportedly owed to Calissio in due bills for the shares sold by Nobilis through COR Clearing.

56.     As a result, on August 24, 2015, DTCC debited COR Clearing over $3.3 million.

57.     COR Clearing sent a letter to DTCC, informing it that "such payment would be in error," as these shares "were not in existence at the time of the dividend record date of June 30, 2015."  (Exhibit A.)  COR Clearing also sent letters to Darbie and Nobilis, among others,

~~FIRST~~ SECOND AMENDED COMPLAINT

alerting them to this issue.

58.     On August 25, 2015, having been alerted that Nobilis, Darbie, and COR Clearing were aware of the issue with the due bills, Adam Carter, president of Calissio, sent an e-mail to Michael Yarmish of Darbie and a representative of Nobilis, admitting that no dividend was owed by Nobilis and asserting that DTCC's collection of the money from COR Clearing was a mistake:

> Your client Nobilis Consulting LLC has asked me to reach out to you.  As you are aware there has been a huge glitch/error on how the dividend was supposed to be paid out.  We are currently in conversations with DTCC and will be resolving this issue over the next couple of days.  There is absolutely no reason for closing your clients account as they are not at fault here.  Once again this was a problem created by FINRA and not your client Nobilis Consulting LLC.

(Exhibit B.)

59.     That same day, Mr. Carter made essentially the same admission to Carlos Salas, CEO of COR Clearing: "As you are aware there has been a huge glitch/error on how the dividend was supposed to be paid out.  We are currently in conversations with DTCC and will be resolving this issue over the next couple of days."  (Exhibit C.)

60.     On information and belief, Defendants perpetrated this fraud with respect to shares sold by another Darbie customer as well, Beaufort, who converted over 150 million shares and then sold over 90 million shares during the due bill period.  Relative to this customer, Defendants received the proceeds from the DTCC charge to COR Clearing in the amount of nearly $700,000.

61.     Despite this admission, Calissio has yet to return any portion of the over $4 million taken from COR Clearing by DTCC.  Calissio's retention of this money only further confirms that Calissio's admission of liability was nothing more than a tactic to stall legal action by COR Clearing in furtherance of the fraud being perpetrated by Defendants.

62.     At this time, there exists the immediate danger that Defendants will abscond with, or distribute, the improperly-held due bills and make it unlikely or impossible for Plaintiff to obtain complete relief in this action

12

~~FIRST~~ SECOND AMENDED COMPLAINT

**The Brokerage Defendants' Improper Receipt and Retention of the Fraudulent Dividends**

63.     On information and belief, Brokerage Defendants and their customers regularly trade in stocks on the over-the-counter ("OTC") market, formerly known as the pink sheets, a highly risky and unregulated marketplace for microcap, or penny stocks, that is rife with fraud.

64.     As such, Brokerage Defendants and their customers were aware, or should have been aware, of the risks inherent in trading penny stocks such as those of Defendant Calissio, and were in the best position to protect against the risk of trading in such speculative investment schemes.

65.     Brokerage Defendants accepted and retained the benefit of the credits from DTCC to their accounts as payments for the Calissio due bills, despite Brokerage Defendants' knowledge of and experience with the risks of penny stocks, and further despite the fact that the dividend amount per share was greater than the market price per share – a telltale sign of fraud or error.

66.     Brokerage Defendants also received actual and constructive notice from DTCC and COR Clearing that the due bills were erroneously assessed.  For instance, the Brokerage Defendants had access to information reflecting the amount of the erroneous due bills before they were credited to the Brokerage Defendants' accounts.  Further, on at least three occasions COR Clearing notified Brokerage Defendants that the Calissio due bills were fraudulent and that COR Clearing had a superior claim to the funds that DTCC credited to Brokerage Defendants as payment for the Calissio due bills.

67.     The DTCC interim account system has, at times, created errors that caused brokerages, like the Brokerage Defendants here, to be credited with funds to which they were not otherwise entitled.  In those instances, the expectation is that in order to avoid enrichment the brokerage which received the erroneous credits—i.e., the Brokerage Defendants—makes whole the entity erroneously debited—i.e., COR Clearing—by directly repaying those funds to the erroneously debited entity.

13

~~FIRST~~ SECOND AMENDED COMPLAINT

68.     By letter dated October 20, 2015, COR Clearing notified Brokerage Defendants of the pendency of this action and that COR Clearing asserted a claim to the funds that Brokerage Defendants received from DTCC for payment of the fraudulent Calissio due bills.

69.     COR Clearing sent Brokerage Defendants a second letter dated November 13, 2015, notifying Brokerage Defendants that the funds credited to them for payment of the Calissio due bills were fraudulent and paid largely via debits made by DTCC to COR's account as a result of Calissio's wrongful conduct.  The letter requested that Brokerage Defendants account for and assist in the return of the improper due bill payments to COR Clearing.

70.     COR Clearing sent Brokerage Defendants a third letter dated May 10, 2016 demanding return of the improper due bill credits and notifying Brokerage Defendants that COR Clearing would be willing to pursue a claim for unjust enrichment against them.

71.     Despite knowledge of the fraudulent nature of the due bill payments, Brokerage Defendants have failed, and continue to fail, to return the funds to their rightful owner, COR Clearing.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment by Plaintiff Against Calissio Defendants)**

72.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

73.     The 327 million shares (in whole or in part) sold by Nobilis (through COR Clearing) to Calissio and/or its affiliates were issued after the June 30, 2015 record date, and thus were ineligible for any dividends.  Indeed, Nobilis received no such dividend on the ex-dividend date.

74.     Defendants caused the wrongful charging of COR Clearing of due bills of over $3.3 million in respect of the Nobilis sales to which Defendants are not entitled, and therefore the over $3.3 million debit was wrongfully made against COR Clearing's account.  Defendants caused this same harm to COR Clearing in respect of Beaufort's sales in the amount of nearly $700,000.

14

~~FIRST~~ SECOND AMENDED COMPLAINT

75.     Defendants, through Carter, purported to Nobilis, Darbie, and COR Clearing that DTCC's debiting of the over $4 million was the result of a "huge glitch/error on how the dividend was supposed to be paid out." Therefore, Defendants admitted that the shares sold by Nobilis/COR Clearing were ineligible for the dividends, and COR Clearing should not have been debited due bills in respect of sales of those shares.

76.     By reason of the foregoing, COR Clearing is entitled to a declaration that Defendants are not entitled to the over $4 million in due bills received for the purchase of the shares from Nobilis, and therefore the $4 million debits were wrongfully made against COR Clearing's account.

77.     In addition to all other forms of relief, COR Clearing seeks injunctive relief precluding Defendants from disposing of the amount Calissio received in due bills to COR Clearing, because COR Clearing is likely to succeed on the merits of this claim, COR Clearing would be irreparably harmed if Defendants were to prevent COR Clearing from being able to recover this money after a favorable judgment, and preventing Defendants from succeeding in its fraud is in the public interest.

### SECOND CLAIM FOR RELIEF

**(Unjust Enrichment by Plaintiff Against Calissio Defendants)**

78.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

79.     There is no contract between Calissio and COR Clearing.

80.     COR Clearing, standing in the shoes of Nobilis and Beaufort, provided a benefit to Defendants in the form of the shares of stock sold, which ultimately came under the ownership of Calissio.  It also provided a benefit in the form of the over $4 million debited by DTCC, some or all for the benefit of Calissio.

81.     Defendants also received and accepted the benefit of the shares from Nobilis and Beaufort, and some or all of the over $4 million from COR Clearing.

82.     Calissio admitted, by and through its President, that it was not entitled to these

15

~~FIRST~~ SECOND AMENDED COMPLAINT

due bills from Nobilis or COR Clearing.

83.     Because no due bills were owed to Calissio for the shares sold by COR Clearing on behalf of Nobilis and Beaufort, it would be inequitable and unjust for Defendants to retain the over $4 million it debited from COR Clearing, through DTCC.

84.     COR Clearing is entitled to restitution in an amount equal to the amount debited by DTCC, over $4 million.

85.     In addition to all other forms of relief, COR Clearing seeks injunctive relief precluding Defendants from disposing of the amount Calissio received in due bills to COR Clearing, because COR Clearing is likely to succeed on the merits of this claim, COR Clearing would be irreparably harmed if Defendants were to prevent COR Clearing from being able to recover this money after a favorable judgment, and preventing Defendants from succeeding in its fraud is in the public interest.

### THIRD CLAIM FOR RELIEF

**(Fraud by Plaintiff Against Calissio Defendants)**

86.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

87.     Calissio and Carter omitted from any public press releases that Calissio issued hundreds of millions of shares of stock after the June 30, 2015 record date.

88.     Calissio and Carter intentionally omitted this material fact knowing that it would cause confusion among record shareholders, and would make it easier for Calissio to misrepresent the dividend eligibility of 80% of the outstanding shares.

89.     Then, Calissio and Carter took advantage of this confusion by allowing DTCC, pursuant to its usual procedures, to provide Calissio with due bills from the sale of dividend-ineligible shares.  Calissio and Carter intentionally omitted this information in order to deceive and gain access to funds to which they were not entitled.  Having omitted this information, Defendants then pursued and obtained payments from entities, such as Nobilis, Beaufort, and COR Clearing, that had sold these dividend-ineligible shares to Calissio before the ex-dividend

16

~~FIRST~~ SECOND AMENDED COMPLAINT

date.

90.     Although Defendants knew that DTCC was improperly providing Calissio with the due bills for these dividend-ineligible shares, Defendants did nothing to rectify this circumstance, but rather allowed DTCC to continue to provide Calissio with funds to which they knew it was not entitled.

91.     For its part in this fraudulent scheme, Calissio issued the dividend-ineligible stocks, omitted material information about dilutive share issuances, and misrepresented the dividend eligibility of the shares.  It then reaped the rewards of its fraud by collecting due bills on the dividend-ineligible shares, and attempted to cover up the scheme when discovered, by feigning a "glitch" in the system.

92.     For his part in this fraudulent scheme, Adam Carter, as president of Calissio, orchestrated the scheme by causing the dilutive share issuance without any notice, hiding from DTCC the fact that not all shares were dividend eligible, and failing to correct DTCC's due bill collection, thereby causing DTCC to collect due bills on all shares.  He then covered up this fraud by communicating to COR Clearing that it was all the result of a "glitch" in the system.

93.     For its part in this fraudulent scheme, Transfer Agent acted as the instrumentality used by the other Defendants to carry out the fraud.  Transfer Agent should have known that not all shares were entitled to dividends, but it kept this silent from purchasers and shareholders, and it made no effort to alert DTCC of this dividend issue, allowing the other Defendants to perpetrate the fraud without alerting their victims.

94.     This fraud was committed with malice and the intent to deceive COR Clearing.

95.     COR Clearing was proximately harmed by Defendants' material misrepresentations and omissions, in the form of the over $4 million in funds debited by DTCC.

96.     When confronted with this fraud, Calissio, through Carter, perpetrated yet another fraud by asserting that this was a simple technical glitch.  However, Defendants have still yet to remedy the issue, making it evident that it was simply furthering its deception to delay legal action.

FIRST SECOND AMENDED COMPLAINT

97.     The aforementioned conduct of Defendants constituted deceit or concealment of material facts known to them with the intent of thereby depriving COR Clearing of property or legal rights or otherwise causing injury, and was despicable conduct that subjected COR Clearing to cruel and unjust hardship in conscious disregard of COR Clearing's rights, so as to justify an award of exemplary and punitive damages.

98.     In addition to all other forms of relief, COR Clearing seeks injunctive relief precluding Defendants from disposing of the amount Calissio received in due bills to COR Clearing, because COR Clearing is likely to succeed on the merits of this claim, COR Clearing would be irreparably harmed if Defendants were to prevent COR Clearing from being able to recover this money after a favorable judgment, and preventing Defendants from succeeding in its fraud is in the public interest.

### FOURTH CLAIM FOR RELIEF

**(Unjust Enrichment by Plaintiff Against Brokerage Defendants)**

99.     COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

100.    There is no contract between COR Clearing and Brokerage Defendants.

101.    Brokerage Defendants accepted funds for payment of Calissio due bills that were improperly debited from COR Clearing's account by DTCC and credited to Brokerage Defendants' accounts.

102.    The funds that Brokerage Defendants accepted for payment of the Calissio due bills belong to COR Clearing.

103.    At the time Brokerage Defendants accepted credits from DTCC for payment of the Calissio due bills, Brokerage Defendants knew or should have known that the due bills were fraudulent, and, therefore, that the funds received for payment of the Calissio due bills were the proceeds of fraud.

104.    Despite this knowledge of the fraudulent nature of the dividends, and of repeated notice from COR Clearing of same, Brokerage Defendants failed to return the funds to COR

18

FIRST SECOND AMENDED COMPLAINT

Clearing, retaining the benefit of the fraudulent credits.

105.    Justice and fairness dictate that Brokerage Defendants ought to return the disputed funds to COR Clearing.

**FIFTH CLAIM FOR RELIEF**

**(Conversion by Plaintiff Against Brokerage Defendants)**

106.    COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

107.    COR Clearing owned property amounting to over $4,000,000 of funds which was unlawfully taken from its accounts.

108.    Part of those funds were transferred to the Brokerage Defendants.

109.    The Brokerage Defendants' exercised dominion over this property of COR Clearing.

110.    The Brokerage Defendants' actions were wrongful and otherwise not authorized.

111.    The actions deprived COR Clearing of its property and COR Clearing continues to be deprived of its property.

~~105.~~112.    As a result of the Brokerage Defendants' actions, COR Clearing has been damaged by an amount at least equal to the property of which it was deprived.

**REQUEST FOR CONSTRUCTIVE TRUST AGAINST BROKERAGE DEFENDANTS IN FAVOR OF PLAINTIFF**

~~106.~~113.    COR Clearing incorporates each and every allegation set forth above as if set forth fully herein.

~~107.~~114.    Brokerage Defendants have been unjustly enriched by the acquisition of funds credited to their accounts for payment of the fraudulent Calissio due bills at the expense of COR Clearing.

~~108.~~115.    COR Clearing has traced the specific funds taken from COR and paid to Brokerage Defendants' accounts in furtherance of Calissio's fraudulent dividend scheme.

~~109.~~116.    Brokerage Defendants have an equitable duty to hold the wrongfully

19

~~FIRST~~ SECOND AMENDED COMPLAINT

Formatted: No bullets or numbering

obtained funds traceable to Calissio's fraud for the benefit of COR Clearing.

~~110.~~117.    According to principles of justice and equity, Brokerage Defendants may not retain the property they wrongfully obtained.  Instead, the Court should impose a constructive trust against Brokerage Defendants over the funds traceable to Calissio's fraud.

## PRAYER FOR RELIEF

WHEREFORE, COR Clearing prays for judgment against Defendants as follows:

1. That pending the final hearing of this case, this Court issue an order for a temporary restraining order, preliminary and permanent injunction prohibiting Defendants from disposing of the over $4 million referenced herein until those funds can be repaid to COR Clearing after success on the merits

2. For declaratory judgment that Defendants are not entitled to the over $4 million of due bills generated from Calissio's purchase of Calissio shares from Nobilis;

3. For restitution of the money debited by DTCC;

4. For constructive trust in favor of Plaintiff and against Brokerage Defendants over money credited by DTCC for payment of the Calissio due bills;

5. For punitive damages;

6. For costs of suit incurred herein, including attorneys' fees; and,

7. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff COR Clearing, LLC demands a trial by jury on all issues so triable.  Plaintiff COR Clearing, LLC requests that the trial take place in Omaha, Nebraska.

Respectfully submitting this ___2nd day of ~~August~~January, 201~~6~~7.

By:  _____s/ Michael T. Hilgers_____

20

~~FIRST~~ SECOND AMENDED COMPLAINT

**Formatted:** Indent: Left:  1"

Michael T. Hilgers (#24483)
mhilgers@hilgersgraben.com
Carrie S. Dolton (#24221)
cdolton@hilgersgraben.com
Hilgers Graben
14301 FNB Parkway, Suite 100
Omaha, NE 68154
Telephone: (402) 218-2106
Facsimile: (877) 437-5755

*Attorneys for Plaintiff COR Clearing, LLC*

**Formatted:** Line spacing:  single

**Formatted:** Line spacing:  single, Tab stops:  4.88", Left

21

~~FIRST~~ SECOND AMENDED COMPLAINT